**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| NATIONAL POSTAL MAILHANDLERS' UNION, LOCAL 301, AFL-CIO <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES POSTAL SERVICE <br><br> Defendants. | Case No.:1:10-cv-11276-DJC |

**MEMORANDUM OF LAW OF NATIONAL POSTAL MAILHANDLERS' UNION, LOCAL 301, AFL-CIO IN SUPPORT OF ITS FED.R.CIV.P. 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS TO COMPEL ARBITRATION**

Plaintiff National Postal Mailhandlers' Union, Local 301, AFL-CIO ("Local 301" or "the Union") submits this Memorandum of Law in Support of its Motion for Judgment on the Pleadings order granting judgment on the pleadings compelling Defendant United States Postal Service ("Postal Service" or "USPS") to submit the instant jurisdictional dispute to the agreed upon dispute resolution process. Local 301 is entitled to judgment on the pleadings and an order compelling arbitration because: 1.) Local 301 and the Postal Service are parties to a national collective bargaining agreement that specifically incorporates a form of jurisdictional dispute resolution called Regional Instruction-399 ("RI-399"); 2.) Governing legal authority concerning arbitrability makes clear that the Union is entitled to an order submitting the instant dispute to the RI-399 process.

## **FACTUAL BACKGROUND**[1]

Local 301 is a labor organization based in Natick, Massachusetts that represents several thousand mail handlers working in a variety of workplaces throughout New England, including all of the work locations in Maine at the heart of this litigation. The Union is also an affiliate of a national labor organization, which is called the National Postal Mailhandlers' Union, AFL-CIO ("NPMHU").

The NPMHU and the Postal Service are parties to a national collective bargaining agreement that sets forth the wages, hours and working conditions for employees in the mail handler craft throughout the United States. By virtue of its affiliation with the NPMHU, Local 301 is also subject to this nationwide collective bargaining agreement.

The collective bargaining agreement between the NPMHU and the Postal Service includes an exclusive mechanism for resolving jurisdictional disputes over work assignments by virtue of a Memorandum of Understanding, referred to as RI-399.[2] RI-399 calls for dispute resolution committees to meet and confer in an effort to resolve jurisdictional disputes at the local, regional and national levels. The first step is submission of the dispute to the Local Dispute Resolution Committee ("LDRC"). The LRDC is required to address the dispute within thirty (30) days after "receipt of a properly filed dispute".[3] The LDRC cannot simply ignore the dispute. It must either issue a signed "tripartite settlement agreement" or a written "tripartite decision . . . setting forth

---

[1] All facts in this Memorandum are taken from Plaintiff's Complaint and attached exhibits, and from Defendant's answer in response to Plaintiff's Complaint.

[2] RI-399 is attached to the Complaint as Exhibit A. The MOU is an agreement between the NMPHU, the USPS and the American Postal Workers Union ("APWU").

[3] Local 301 representatives filed grievances calling for an LDRC in April 2010. The Union does not understand the USPS to be contesting the fact that it received a properly filed dispute. Rather the USPS seems to contest only whether the particular dispute raised by the Union is subject to the RI-399 process.

the position of each party". Complaint, Ex. A at 3 of 8. The USPS has effectively stymied the process by refusing to participate.

The RI-399 process is applicable to three instances of jurisdictional disputes: disputes arising in a "New or Consolidated Facility," disputes involving work which had not previously existed in the installation ("New Work"), and disputes resulting from an "Operational Change." Complaint, Ex. A at 7 of 8.

The RI-399 procedures, which followed the RI-399 MOU, bind the Postal Service, the NPMHU and the APWU. Complaint, Ex. B. In pertinent part, the procedures state that:

> The Dispute Resolution Committee procedures contained in the memorandum are the exclusive procedures for processing and resolving such disputes. We remind you that this is a trilateral agreement and it is the only method by which the parties are to discuss and resolve jurisdictional disputes.
>
> As we have indicated, these agreements were intended to provide a procedure for expeditious resolutions of long-standing disputes. They will work only if all parties are committed to this goal. The National parties are committed to it and expect the local and regional committees to follow through on this commitment.

Commencing in approximately 2009 or 2010, the Postal Service changed work assignments at numerous facilities in Maine relating to the processing of empty mail equipment – a work function that NPMHU mail handlers have historically performed. Specifically, the Postal Service has transferred the processing of this empty mail equipment from larger postal facilities, such as those in Hampden and Scarborough, to smaller installations, such as Gorham, Brunswick, Sanford, Biddeford, Calais, Ellsworth, Houlton, Presque Isle, Waterville, Caribou, Machias, Bath, Rockland, Yarmouth, and Wells.

Local 301 officials have attempted on numerous occasions to commence the initial step of the RI-399 process by consisting a Local Dispute Resolution Committee ("LDRC") to determine whether the processing of empty mail equipment in these smaller postal installations constitutes "New Work" in those facilities, thereby presenting a jurisdictional dispute solely appropriate for RI-399. The Postal Service has resisted all such efforts by Local 301 to commence the RI-399 process, and has repeatedly claimed that the fact that there are currently no NPMHU mail handlers working in the smaller postal installations permits the Postal Service to refuse to constitute an LDRC or, more generally, to submit the jurisdictional dispute to RI-399 at all.

Local 301 argues that the detailed RI-399 process and procedures support its view that the parties should follow the agreed upon procedure. The RI-399 procedures furnish no grounds for the Postal Service to impede resolution of this jurisdictional dispute by refusing to participate in the process. The Union has accordingly commenced this litigation seeking an order compelling the Postal Service to follow the RI-399 dispute resolution process.

**ARGUMENT**

**I.      LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS**

A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 28 (1$^{st}$Cir.2008). See also Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir.2007). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom...." R.G. Fin. Corp. v. Vergara-

Nunez, 446 F.3d 178, 182 (1st Cir.2006). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. *Cf.* In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15-16 (1st Cir.2003) (recognizing this principle in the Rule 12(b)(6) context). There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point. Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir.1988).

To survive a Rule 12(b)(6) motion (and, by extension, a Rule 12(c) motion) a complaint must contain factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true...." Perez-Acevedo 520 F.3d at 29 (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1965 (2007)).

## II. UNDER GOVERNING AUTHORITY, LOCAL 301 IS ENTITLED TO AN ORDER COMPELLING ARBITRATION OF THIS JURISDICTIONAL DISPUTE THROUGH RI-399

Governing law in this Circuit makes clear that Local 301 is entitled to order compelling the Postal Service to submit the instant dispute to the RI-399 process.

Section 1208(b) of the Postal Reorganization Act 39 U.S.C. § 1208(b) gives federal district courts jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations…" 39 U.S.C. § 1208(b). Courts in this Circuit have noted that "[b]ecause this language is identical in all relevant respects to that of § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), cases interpreting the latter apply to § 1208(b)." Miller v. U.S. Postal Service, 985 F.2d 9, n.1 (1st Cir. 1993)(citing

5

Bowen v. United States Postal Serv., 459 U.S. 212, 232 n. 2 (1983)(White, J., concurring in part and dissenting in part).

The U.S. Supreme Court has repeatedly recognized that the question of whether a collective bargaining agreement requires parties to arbitrate a given dispute is a decision for courts. See e.g. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986); Operating Engineers v. Flair Builders, Inc., 406 U.S. 487, 491 (1972); Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960). Courts have recognized generally accepted principles for determining whether a given dispute is arbitrable. The applicable principles were restated in At&T, supra. There, the collective bargaining agreement permitted management to lay off employees for "lack of work". The employer laid off 79 employees in Chicago and the union grieved. The employer claimed the unreviewable (i.e., non-arbitrable) right to lay off for lack of work and the union sued to compel arbitration. The Court set forth the applicable principles:

1. A party cannot be required to submit to arbitration any dispute which he has not agreed to submit.
2. Unless the parties clearly provide otherwise, whether the parties agreed to arbitrate is a question for the court.
3. The court should not, in deciding whether the parties have agreed to arbitrate a particular dispute, decide the merits of the grievance.
4. Where a contract contains an arbitration clause there is a presumption of arbitrability in the sense that "an order to arbitrate a particular grievance should not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute". <u>AT & T Techs</u>, 475 U.S. at 648-650.

In applying the foregoing authority to the facts of this case, there is no question with respect to the first interpretive principle that Local 301 and the Postal Service are parties to a collective bargaining agreement that includes RI-399 as the sole and exclusive mechanism for resolving work jurisdiction disputes. The RI-399 documents, signed by representatives of all three parties, speak for themselves:

> As we have indicated, these agreements were intended to provide a procedure for expeditious resolutions of long-standing disputes. They will work only if all parties are committed to this goal. The National parties are committed to it and expect the local and regional committees to follow through on this commitment.
> …

Complaint, Ex. B at 2.

The Union has raised a work assignment dispute. The parties have a clear contractual mechanism for addressing it.

In looking at the second principle (i.e., determining arbitrability), the question of whether this collective bargaining agreement provides for arbitration of this dispute is clearly answered in the affirmative. Here, the RI-399 process defines "New Work" as "work which had not previously existed in the installation." Local 301 asserts that the processing of empty mail equipment has traditionally been a function that its members have performed in large postal installations, and that the Postal Service's transfer of the processing of such empty mail equipment to smaller facilities appropriately presents a dispute about whether such processing is "New Work" in those smaller installations. The exceptionally broad definition of "New Work" in the parties' RI-399 governing documents provides no exceptions or caveats as to when or whether "New Work"

disputes shall be submitted to RI-399. Accordingly, the nature of Local 301's dispute fits comfortably within the language of the governing RI-399 documents.[4]

In reviewing the third arbitrability principle, the Supreme Court has cautioned that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." AT & T Technologies, Inc., 475 U.S. at 649-650. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." Id. at 650 (quoting Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960).

On this third principle, and without wading too deeply into the facts of the instant case, Local 301's dispute concerning the processing of empty mail equipment presents an issue strikingly similar to another jurisdictional dispute that the U.S. Court of Appeals for the Third Circuit recently found was properly subject to the RI-399 process. In Trenton Metropolitan Area Local of American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 2011 WL 504929 (3rd Cir. 2011), the Postal Service appealed a judgment by the district court that upheld a bilateral contract settlement between the Postal Service and

---

[4] Of course the Postal Service may argue that the work in dispute is not "New Work" but the court cannot resolve the question without interpreting the agreement itself.

8

the APWU.[5] In that case, the Postal Service contended that the bilateral settlement was void because the facts of the underlying bilateral settlement – concerning which workers should properly staff and operate a type of automated sorting machine -- centered on a jurisdictional dispute that could only be adjudicated in the RI-399 process. The Appeals Court agreed with the Postal Service's position in that case, finding that all jurisdictional disputes that fit within the RI-399's framework must be submitted to the RI-399 process. Accordingly, the Appeals Court found that the district court lacked subject matter jurisdiction to review the bilateral agreement in the first place.[6]  The district court should have deferred to the RI-399 process and, because the parties had not utilized that process, it lacked jurisdiction over the merits.

On the fourth and final principle of arbitrability, where a collective bargaining agreement contains an agreement to arbitrate a dispute, then arbitration should proceed "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Newspaper Guild of Salem, Local 105 of Newspaper Guild, Local 105, 79 F.3d 1273, 1279 (quoting AT & T Techs., 475 U.S. at 650 and Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583 (1960)."

The Union does not seek to avoid conditions precedent to arbitration. See HIM Portland, LLC v. DeVito Builders, 317 F.3d 41 (1st Cir. 2003).  Indeed the Union seeks to compel the Postal Service to participate in those pre-arbitration processes as it agreed to

---

[5] The district court in the underlying case granted the NPMHU intervenor status, finding that that Union's legal interests were entwined in the question of whether the bilateral USPS-APWU settlement was valid.

[6] Interestingly, the Postal Service took precisely the opposite position in the Trenton litigation than it takes in the instant litigation: namely, that all jurisdictional disputes properly belong in the RI-399 process. Noting the the refusal of the APWU to submit that dispute to RI-399, the Court instructed that "RI-399 applies even to grievances alleging violations of contracts other than RI-399, so long as one of the parties believes that the grievance relates to a jurisdictional dispute." Id.

9

do. The LDRC is the first step in a process that culminates in either Regional or National Arbitration. The employer should not be permitted to deny access to the ultimate dispute resolution mechanism by its failure to participate in the preliminary processes.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Local 301 respectfully requests that this Court grant the Union's motion on the pleadings, and enter an order compelling the Postal Service to convene the LDRC, to consider the Union's grievance and to participate in the agreed upon dispute resolution process.

Respectfully submitted,

NATIONAL POSTAL MAILHANDLERS'
UNION, LOCAL 301,AFL-CIO,

By and through its attorneys,

/s/ Louis A. Mandarini
Paul F. Kelly, Esq. (BBO #267000)
pkelly@segalroitman.com
Louis A. Mandarini, Esq. (BBO #669293)
lmandarini@segalroitman.com
SEGAL ROITMAN LLP
111 Devonshire Street, 5th Floor
Boston, MA 02109
Dated: April 1, 2011          (617) 742-0208

**CERTIFICATE OF SERVICE**

    I, Louis A. Mandarini, hereby certify that a true and accurate copy of the foregoing Memorandum in Support of the Motion for Judgment on the Pleadings, electronically filed with the Court this 1st day of April, 2011, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                            /s/ Louis A. Mandarini
                                            Louis A. Mandarini, Esq.