UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL POSTAL MAILHANDLERS' UNION, LOCAL 301, AFL-CIO, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 10-11276-DJC |
| UNITED STATES POSTAL SERVICE, | )<br>) |
| Defendant. | )<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                      February 13, 2012

**I.   Introduction**

Plaintiff National Postal Mailhandlers' Union, Local 301, AFL-CIO ("Local 301") brings this action against the United States Postal Service ("USPS") to compel arbitration of a dispute concerning which of two unions representing its employees, NPMHU affiliate Local 301 or the American Postal Workers' Union ("APWU"), is entitled to empty mail equipment at a number of local post offices in Maine.  Local 301 now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  For the reasons set forth below, Local 301's motion for judgment on the pleadings is DENIED.

**II.   Burden of Proof and Standard of Review**

When considering a motion under Rule 12(c), a court must view the facts in the pleadings and the reasonable inferences therefrom in the light most favorable to the nonmovant.  Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).   The Court may "supplement the facts

contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). However, the Court may not resolve contested facts in connection with a Rule 12(c) motion; "a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point." Vergara-Nunez, 446 F.3d at 182. That is, when material issues of fact are disputed, the movant's judgment on the pleadings must be denied. Id.; Tavares de Almeida v. Children's Museum, 28 F. Supp. 2d 682, 685 (D. Mass. 1998).

### III. Factual and Procedural Background

Plaintiff Local 301, is a labor organization based in Natick, Massachusetts that represents mail handlers throughout New England, including Maine and is an affiliate of the national labor organization, NPMHU. (Compl. ¶¶ 2, 3). Defendant USPS employs mailhandlers represented by NPMHU and clerks represented by APWU. (Compl. ¶¶ 3, 8). NPMHU and USPS are parties to a nationwide Collective Bargaining Agreement, effective from November 21, 2006 through November 20, 2011, covering USPS employees working in locations throughout New England. (Compl. ¶ 4). By virtue of its affiliation with NPMHU, Plaintiff Local 301 is subject to this Collective Bargaining Agreement.

In 1979, USPS adopted and issued Regional Instruction No. 399 ("RI-399"), setting forth the criteria for determining craft assignments of specific mail processing functions - i.e., whether clerks or mailhandlers would be assigned a certain type of work. (Compl. ¶ 8; Def. Opp., Ex. 1).[1] Pursuant to RI-399, each post office facility was to identify the "primary craft" for the performance

---

[1] "A 'craft' refers to a particular category of unionized worker, with the categorization based on job functions." Trenton Metro. Area Local of the Am. Postal Workers Union, AFL-CIO v. United States Postal Serv., 636 F.3d 45, 48 n. 2 (3d Cir. 2011).

of each assignment at the facility. (Def. Opp., Ex. 1). RI-399 further provides that the "[a]ssignment of new or additional work, not previously existing in the installation, shall be made in accordance with the primary craft designations contained in this instruction." (Id.).

In April 1992, the two unions and the USPS entered into a "Memorandum of Understanding" ("MOU") establishing RI-399 dispute resolution procedures for resolving jurisdictional disputes - i.e., whether the clerks (APWU) or the mailhandlers (NPMHU) were entitled to perform a certain type of mail processing work at a facility. (Compl. ¶ 9, Ex. A). The MOU provides that "[e]xcept as otherwise specifically provided in the New or Consolidated Facilities, New Work, or Operations Change sections contained in this memorandum, all local craft jurisdictional assignments which are not already the subject of a pending locally initiated grievance will be deemed as a proper assignment for that facility." (Id.). The MOU further states that "[e]ach party at the local level will be responsible for maintaining an inventory of jurisdictional assignments not in dispute. As jurisdictional disputes are resolved under this procedure, the results shall be added to the inventory." (Id.). The MOU calls for dispute resolution committees to be established at the local, regional and national levels. (Id.). Each local facility was required to form a Local Dispute Resolution Committee ("LRDC") for the purpose of resolving jurisdictional disputes. (Compl. ¶ 11, Ex. A). A LRDC consists of a representative from USPS, APWU and NPMHU. (Compl., Ex. A). The LRDC has thirty days after receiving the dispute to attempt to resolve it. (Id.). If the LRDC cannot resolve the dispute within thirty days, a tripartite decision is issued by the LRDC setting forth the position of each party. (Id.). The moving union may appeal the dispute to the regional committee and if the dispute remains unresolved at the regional level, the moving union may appeal to submit the dispute to regional arbitration. (Id.). If the disputed issue is an interpretive issue of general

application and remains unresolved, the moving union may only appeal to the national committee. (Id.). If the national committee cannot resolve the dispute, the parties' dispute is submitted to national arbitration. (Id.). If the national committee finds that the disputed issue does not involve an interpretive issue of general application, the dispute is remanded to the regional level and placed on the list of pending arbitration cases. (Id.).

Following the adoption of the RI-399 dispute resolution procedures in the MOU, craft jurisdiction disputes could only be submitted to the RI-399 process if the disputed work constituted "[n]ew [w]ork," was in a "[n]ew or [c]onsolidated facility," or was the result of an "[o]perational [c]hange." (Compl. ¶ 12, Ex. A). The RI-399 dispute resolution procedures are the "exclusive procedures for processing and resolving [jurisdictional] disputes." (Compl. ¶¶ 13-14, Ex. B).

In 1994, the USPS and the two unions (APWU and NPMHU) entered into a tripartite agreement under which the parties agreed that inventories would be prepared in those facilities for which inventories had not been completed and that the inventories for each facility would reflect "which craft [i.e., clerks or mailhandlers] was performing each operation within the facility as of April 29, 1992" – the date on which the RI-399 MOU was issued. (Def. Opp., Ex. 2). The agreement provided that "[a]ny inventory items for which exceptions have not been provided as of June 1, 1994, will be considered not in dispute, and will be deemed as proper assignments for that facility." (Id.) (emphasis in original).

Local 301 alleges that the processing of empty mail equipment has historically been work assigned to NPMHU members. (Compl. ¶ 15). Around 2009 or 2010, the complaint alleges that USPS changed a number of work assignments regarding the processing of empty mail equipment at installations throughout Maine and that such changes have transferred the processing of empty

4

mail equipment from larger installations to smaller installations in fifteen locations. (Compl. ¶¶ 16-17). The complaint further alleges that such work at these locations constitutes "New Work" for those facilities and thus presents a jurisdictional work dispute appropriate for submission to the dispute resolution procedures as set forth in RI-399. (Compl. ¶ 19). Although Local 301 has attempted to initiate LRDCs at the fifteen installations that are processing empty mail equipment, the USPS has not agreed to commence the RI-399 dispute resolution process. (Compl. ¶¶ 18, 20). Local 301 claims that USPS' failure to do so constitutes a breach of the parties' Collective Bargaining Agreement, which incorporates the RI-399 Disputes Resolution Procedures as the sole mechanism for resolving jurisdictional disputes concerning work assignments. (Compl. ¶¶ 21-24).

On July 30, 2010, Local 301 filed the instant action to compel arbitration of the alleged jurisdictional dispute concerning work assignments pursuant to the RI-399 dispute resolution procedures. (D. 1). Local 301 has now moved for judgment on the pleadings, which USPS opposes. (D. 16, 21).[2] The Court has now heard oral argument on the motion and the parties have filed supplemental briefing. (D. 24, 25).

**IV. Discussion**

    **A. Guiding Principles for Arbitrability of Disputes**

It is well established that "[w]hether or not the parties have agreed to submit a certain dispute to arbitration 'depends on contract interpretation, which is a question of law'" appropriate for

---

[2]The Court has jurisdiction over the instant action pursuant to the Postal Reorganization Act, 39 U.S.C. § 1208(b) (granting district courts jurisdiction over "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations"). See Miller v. United States Postal Serv., 985 F.2d 9, 10 n. 1 (1st Cir. 1993) (noting that because the language in § 1208(b) is virtually identical to that of § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), cases interpreting the latter apply to § 1208(b)).

judicial determination. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)); AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).  Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., 475 U.S. at 648 (quoting United Steelworkers of Am. v. Warrior Gulf Navigation Co., 363 U.S. 574, 582 (1960)).  A court "deciding whether the parties have agreed to submit a particular grievance to arbitration . . . is not to rule on the potential merits of the underlying claims." AT&T, 475 U.S. at 649; Municipality of San Juan v. Corporacion Para El Fomento Economico de la Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005).  Courts must also bear in mind that when a contract includes an arbitration clause, "'[d]oubts should be resolved in favor of coverage.'" AT&T Techs., 475 U.S. at 650 (quoting Warrior Gulf, 363 U.S. at 583).  This means that "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Municipality of San Juan, 415 F.3d at 149 (quoting AT & T Techs., 475 U.S. at 650) (further citation omitted).  The Supreme Court has explained that such "presumption of arbitrability for labor disputes recognizes the greater institutional competence of arbitrators in interpreting collective-bargaining agreements, furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining." AT&T Techs., 475 U.S. at 650 (internal quotation marks and citation omitted).

 Bearing all of these principles in mind, the Court turns to the question now before it: whether the present disagreement between NPMHU affiliate Local 301 and USPS regarding work

assignments of the unions (Local 301 and APWU) constitutes a "jurisdictional dispute" within the meaning of the parties' agreements that must be submitted to the RI-399 dispute resolution process.

      **B.    Whether the Present Dispute is a "Jurisdictional Dispute" Cannot Be Determined At This Time**

Although the term "jurisdictional dispute" is not defined in any agreement between the parties or in the RI-399 itself, the use of the term in such documents makes clear that a jurisdictional dispute is any dispute over the question of which craft (clerks or mailhandlers) will be assigned certain work functions - here, the processing of empty mail equipment- in a particular facility. See, e.g., Compl., Exs. A, B; Def. Opp., Exs. 1, 2. However, the RI-399 procedure limits the types of jurisdictional disputes the LRDC may consider. The RI-399 MOU prohibits "new disputes" from being initiated at the local level "by either union challenging jurisdictional work assignments in any operations as they [ ] exist[ed]" at the time of the signing of the RI-399 MOU in 1992. (Compl., Ex. A). The MOU states that unless the jurisdictional dispute concerns new work, operational changes or new or consolidated facilities, all local work assignments for mailhandlers and clerks that were "not already the subject of a pending locally initiated grievance was deemed as a proper assignment for that facility." (Id.). The RI-399 MOU defines "new work" as "work which had not previously existed in the installation." Compl., Ex. A; Pl. Memo at 7.

Local 301 argues that the "transfer" of the processing of empty mail equipment from mailhandlers in large post offices to clerks in fifteen smaller post offices in Maine falls within this exception of "new work" and as a result, is a "jurisdictional dispute" appropriate for resolution by the RI-399 procedures. However, on the present record, the Court cannot determine at this stage in the proceedings whether the transfer of emptying mail equipment from larger installations (Local

301 mailhandlers) to smaller installations (APWU clerks) constitutes "new work" to trigger the RI-399 process.

On a plaintiff's motion for judgment on the pleadings the complaint must "conclusively establish," Vergara-Nunez, 446 F.3d at 182, that the present dispute amounts to a jurisdictional dispute to be appropriate for submission to RI-399 dispute resolution procedures. The present complaint fails to do so for a number of reasons. First, the agreements between the parties required each party at the local level to maintain the inventory of jurisdictional assignments not in dispute and provided that any local craft jurisdictional assignments that were not already in dispute would be considered a proper assignment for that facility. (Compl., Ex. A). Pursuant to the 1994 Tripartite Agreement on RI-399 inventories, the inventories were to "reflect which craft was performing each operation within the facility as of April 29, 1992." (Def. Opp., Ex. 2). The complaint does not allege that any inventories existed at the fifteen facilities in question or that any LRDCs were established. At oral argument, Local 301 did not dispute that inventories had neither been created nor maintained. The record before the Court does not contain any information regarding these inventories or any designated craft assignments - i.e., were only mailhandlers emptying mail equipment at the time or were only APWU members doing so? Even assuming, as Local 301 argues, that the lack of inventories does not affect the determination as to whether the emptying of mail equipment by APWU members at the fifteen facilities at issue amounts to "New Work," the RI-399 defines "New Work" as that which had not "previously existed in the installation." (Compl., Ex. A). The complaint contains no factual allegations addressing whether the emptying of mail equipment "had not previously existed" in the fifteen installations in Maine at issue to constitute "New Work." The complaint is further devoid of facts supporting the conclusory allegation that

emptying mail equipment has traditionally been work assigned to NPMHU. (Compl. ¶ 15). Moreover, USPS denies that emptying mail equipment in the smaller installations can be classified as "New Work," that USPS "has effected numerous work assignment changes regarding the processing of empty mail equipment at installations throughout the State of Maine," that such changes transferred this work from larger facilities (where mailhandlers were assigned the work) to smaller facilities in fifteen locations (where APWU clerks are now performing the work), and that this work had traditionally been assigned to NPMHU members. (USPS Answer, ¶¶ 15-19 (denying allegations); USPS Opp. at 7). These disputed issues of fact are material to determining whether the work at the fifteen installations is "New Work" and consequently, whether the instant dispute between the parties constitutes a "jurisdictional dispute" for submission to RI-399 dispute resolution procedures. Local 301's motion for judgment on the pleadings simply cannot lie in light of such disputed issues of material fact. See Tavares de Almeida, 28 F. Supp. 2d at 685 (noting that a motion for judgment on the pleadings is "a means of disposing of cases when the material facts are not in dispute") (citation omitted). Accordingly, Local 301's motion for judgment on the pleadings is DENIED.

## V.     Conclusion

For the foregoing reasons, Local 301's motion for judgment on the pleadings is DENIED. **So ordered.**

/s/ Denise J. Casper
United States District Judge
